UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ATHALIA E. HUFF, | ) No. CV 11-8286-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 7, 2011, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 24, 2011, and November 8, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 12, 2012, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 10, 1974. [Administrative Record ("AR") at 40-41.] She has a seventh grade education [AR at 114], and past relevant work experience as an in-home care provider, a hand packager, and a warehouse worker.[1]  [AR at 110-11, 116-22.]

Plaintiff filed an application for Disability Insurance Benefits on January 8, 2008, and protectively filed an application for Supplemental Security Income payments on January 31, 2008, alleging that she has been unable to work since October 13, 2007, due to a hernia and depression.  [AR at 40-46, 80-88, 109-15.]  After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 14, 42-46, 48-49.]  A hearing was held on March 19, 2010, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 25-39.]  A vocational expert also testified.  [AR at 35-38.]  On April 7, 2010, the ALJ determined that plaintiff was not disabled.  [AR at 14-21.]  On July 13, 2011, the Appeals Council denied plaintiff's request for review.  [AR at 2-6, 9.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] A vocational expert testified at plaintiff's hearing before the Administrative Law Judge that plaintiff has past relevant work as a hand packager and a warehouse worker.  [AR at 36.]

2

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since October 13, 2007, her alleged disability onset date. [AR at 16.][2] At step two, the ALJ concluded that plaintiff has the severe impairment of depression. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. [AR at 17.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels, but is "limited to simple repetitive tasks." [AR at 18.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a hand packager and a warehouse worker. [AR at 20.] Accordingly, the ALJ determined that plaintiff has not been under a disability at any time from October 13, 2007, through April 7, 2010, the date of the decision. [AR at 21.]

/

/

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. [AR at 16.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

# V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly rejected the opinions of an examining physician. [JS at 3-6, 12-13.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. See id. at 830-31. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct." Id.

On June 25, 2008, Dr. Jobst Singer completed a psychiatric evaluation of plaintiff. [AR at 201-03.] Dr. Singer noted that there were "no psychiatric records available to review," and that plaintiff was therefore the source of information for his evaluation. [AR at 201.] Dr. Singer performed a mental status examination of plaintiff, however, and found that it "showed that [plaintiff] was able to do the mental status examination tasks with significant problems." [AR at 202-03.] Dr. Singer concluded that: "[b]ased on the interview, [plaintiff's] ability to understand, remember, and perform instructions is moderately impaired for simple tasks and for complex tasks"; "her mental state and memory deficits would significantly interfere with [her] ability to complete a normal day of work" (although Dr. Singer also stated that "persistence cannot be fully evaluated in an evaluation of this type"); and "[b]ased on behavior during the interview, [plaintiff's] ability to relate [to] and interact with coworkers and the public, as well as the ability to be supervised, is impaired by her lethargy." [AR at 203.]

In her decision, the ALJ rejected Dr. Singer's opinion, stating that "[his] assessment is unsupported by the medical evidence." [AR at 19.] The ALJ did not give any additional reasons to reject Dr. Singer's opinion. [See id.]

Dr. Singer's opinion concerning plaintiff's mental limitations conflicted with that of Dr. C. Dudley, a non-examining physician, who concluded in a July 29, 2008, Mental Residual Functional Capacity Assessment that plaintiff is not significantly limited in her ability to (among other things): understand, remember, and carry out very short and simple instructions; complete a normal workday and workweek without interruptions from psychologically-based symptoms; interact appropriately with the public; get along with coworkers; and accept instructions and respond appropriately to criticism from supervisors. [AR at 204-06.] Thus, the ALJ was required to give specific and legitimate reasons supported by substantial evidence to reject Dr. Singer's opinion. Lester, 81 F.3d at 830-31. The ALJ failed to do so.

First, the ALJ's bare assertion that Dr. Singer's opinion was not sufficiently supported by the medical evidence is not a proper reason, by itself, for rejecting the opinion because it fails to reach the level of specificity required for rejecting an examining physician's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted). An ALJ can meet the requisite specific and legitimate standard for rejecting an examining physician's opinion deemed inconsistent with or unsupported by the medical evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ's conclusory assertion that Dr. Singer's opinion was not supported by the medical evidence, without explaining how the evidence was inconsistent with Dr. Singer's opinion, does not provide the

1 degree of specificity required to reject Dr. Singer's opinion.[4] See Pellinen v. Astrue, 2012 WL 3564232, at **13-14 (W.D. Wash. June 28, 2012) (ALJ's rejection of examining physician's opinion on the ground that it was unsupported by objective clinical findings and inconsistent with the evidence as a whole did not achieve the level of specificity required in Embrey); Berg v. Astrue, 2012 WL 1379046, at *2 (W.D. Wash. Mar. 28, 2012) (ALJ's rejection of examining physician's opinion on the ground that it was unsupported by the objective medical evidence was "a conclusory finding and not sufficient grounds to reject an examining doctor's opinion" under Embrey); Kohzad v. Astrue, 2009 WL 596609, at *6 (C.D. Cal. Mar. 3, 2009) (same).

In addition, there was at least some evidence supporting Dr. Singer's opinions about plaintiff's limitations, including in plaintiff's records from the Compton Mental Health Center ("CMHC") and Dr. Singer's mental status examination. Consistent with Dr. Singer's assessment that "[plaintiff's] ability to understand, remember, and perform instructions is moderately impaired for simple tasks and for complex tasks," a CMHC staff member opined based on a January 9, 2008, mental status evaluation that plaintiff had impaired concentration, minimal judgment, and a "below average fund of knowledge," and was "unable to concentrate." [AR at 191-96.] Another CMHC staff member opined based on an April 6, 2010, adult initial assessment that plaintiff was disorganized. [AR at 248-52.] The second statement by Dr. Singer that the ALJ concluded was "unsupported" was that "[plaintiff's] mental state and memory deficits would significantly interfere with [her] ability to complete a normal day of work." Nevertheless, the January 9, 2008, CMHC mental status evaluation found plaintiff to be "tearful," "withdrawn," and "sad" [AR at 195]; CMHC progress notes dated April 15, 2008, May 27, 2008, and July 17, 2008, noted varying frequencies

---

[4] Dr. Singer based his findings at least in part on his mental status examination of plaintiff, which included -- in addition to plaintiff's own statements concerning her mood and whether she experienced hallucinations -- observations Dr. Singer made regarding plaintiff's appearance, behavior, affect, alertness, and thought processes, as well as assessments he conducted concerning plaintiff's memory, orientation, knowledge, and concentration. [See AR at 202-03.] Thus, defendant's contention that Dr. Singer "rel[ied] entirely on Plaintiff's subjective statements as his only source of information" is disingenuous. [See JS at 6-7.] Moreover, to discount mental status examinations on the basis that they rely on the patient's subjective statements and the psychiatrist's observations would render all such examinations inadequate as objective medical evidence.

of anxiety attacks [AR at 197-98]; and the April 6, 2010, CMHC assessment noted that plaintiff appeared isolated and withdrawn, and did not remember what medications had been prescribed to her. [AR at 249, 251.] Moreover, Dr. Singer's mental status examination of plaintiff revealed that she believed, on June 25, 2008, that it was February 23, 2006, and also that while she could recall three out of three items immediately, she could not recall any of those items after three minutes. [AR at 201-02.] Finally, Dr. Singer opined that "[plaintiff's] ability to relate [to] and interact with coworkers and the public, as well as the ability to be supervised, is impaired by her lethargy," which is consistent with both his observation that plaintiff "looked a bit low in mood or dazed, lethargic" [AR at 202], and the April 6, 2010, CMHC note that plaintiff appeared to be suffering from decreased sleep and lack of energy. [AR at 252.]

The Commissioner contends that the ALJ's rejection of Dr. Singer's opinion was proper because Dr. Singer based his opinion on plaintiff's subjective complaints, and the ALJ discounted plaintiff's credibility; and because the ALJ properly relied on the opinion of Dr. Dudley instead. [JS at 6-11.] These contentions by the Commissioner fail. First, the ALJ did not identify plaintiff's discounted credibility as a reason to reject Dr. Singer's opinion, and "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)). Second, even if Dr. Singer's opinion conflicted with that of Dr. Dudley, a non-examining physician, the ALJ was still required to give specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Singer's opinion, which the ALJ did not do. Lester, 81 F.3d at 830-31. Remand is warranted.[5]

---

[5] Plaintiff points out that neither party identifies why Dr. Singer was not given the opportunity to review the mental health records that were part of the record by the time Dr. Singer examined plaintiff on June 25, 2008, and which Dr. Dudley reviewed in rendering his July 29, 2008, opinion [see AR at 217]. [JS at 12-13.] Plaintiff contends that "Dr. Singer should have been given the opportunity to review the same records Dr. Dudley did in rendering his opinions." [JS at 13.] In light of the limited medical evidence in the record and the significance of examining physicians'
(continued...)

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider Dr. Singer's opinion. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 27, 2012

*/s/ Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[5](...continued)
opinions, the Court agrees. On remand, the ALJ should recontact Dr. Singer and provide him with an opportunity to review plaintiff's mental health records and to render any opinion related thereto.